USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/9/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

OWEN HARTY,

                              Plaintiff,

     -against-

SPRING VALLEY MARKETPLACE LLC, JOL
OWNERS LLC, RK SUB SHOP INC., and UB
KOOL INC.,

                              Defendants.

15-CV-8190 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

Plaintiff Owen Harty, who is disabled and requires a wheelchair for mobility, sues landlords Spring Valley Marketplace ("Spring Valley") and JOL Owners ("JOL") (collectively "Defendants"), and two tenants thereof,[1] pursuant to Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.*, and the New York State Human Rights Law ("NYSHRL"), N.Y. EXEC. LAW § 296. According to the Second Amended Complaint, Plaintiff's injuries arise from a visit to Spring Valley Marketplace (the "Marketplace"), where he encountered architectural barriers that discriminated against him, endangered his safety, and prevented him from accessing the goods and services available there to the public. (ECF No. 34, Second Am. Compl. ("SAC"), ¶ 16.) Defendants – the joint owners and landlords of the public accommodation

---

[1] Defendants Spring Valley and JOL own Spring Valley Marketplace, a 201,000 square foot commercial shopping center with twenty-six (26) separate tenant spaces in Rockland County, New York. (*See* Mem. Supp. Defs.' Mot. Dismiss at 1.) At a pre-motion conference on January 20, 2016, Defendants indicated their intent to move to dismiss the Complaint based, in part, upon Plaintiff's failure to join as parties any of the tenant stores about which he was complaining. (*See* ECF No. 20, Pre-Mot. Conference Letter addressed to Court) (previewing basis for defendants' proposed motion to dismiss). Defendants argued that the tenants of the Shopping Center were necessary parties to the extent that Plaintiff sought injunctive relief requiring alterations within tenant spaces. (*Id.* at 3.) Therefore, Plaintiff added as defendants the operators of two (2) specific businesses located within the shopping center: (1) Defendant RK Sub Shop Incorporated, which operates Subway Store #13050, and (2) UB Kool, Inc., which operates Jose O'Brien Restaurant.

in question – now move to dismiss the action for (1) lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure ("Rule 12(b)(1)"); (2) failure to state a claim for which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"); and (3) failure to join necessary parties pursuant to Rule 12(b)(7) under Rule 19 of the Federal Rules of Civil Procedure ("Rule 12(b)(7)" and "Rule 19").  (*See* ECF Nos. 39, 40, & 41, Mem. Supp. Defs.' Mot. Dismiss (collectively, "Defs.' Mem.").)  For the reasons stated below, Defendants' motion to dismiss is DENIED in its entirety.

## BACKGROUND

The following facts – which are taken from the Second Amended Complaint, documents it incorporates, matters of which the Court may take judicial notice, as well as from the parties various affidavits, declarations, and exhibits submitted – are assumed to be true for the purposes of this motion.  *See, e.g.*, *Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013); *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009); *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005); *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (court may consider matters outside the pleadings on a motion pursuant to Federal Rule of Civil Procedure 12(b)(1)); *Dunmann Realty, LLC v. Faust*, 267 F.R.D. 101, 101 n.1 (S.D.N.Y. 2010) (considering a Rule 12(b)(7) motion).[2]

### I.     Relevant Facts

Plaintiff, who resides in Florida, is disabled and uses a wheelchair for mobility.  (SAC ¶¶ 1-2; *see also* ECF No. 44-1, Decl. of Owen Harty ("Harty Decl.") ¶¶ 1, 4.)  Plaintiff is a licensed

---

[2] As these citations indicate, and as made clear, *infra*, in analyzing that aspect of defendants' motion based on Federal Rule of Civil Procedure 12(b)(7), the Court may consider matters outside the pleadings in ruling on whether parties are necessary to a litigation.  Although much of the factual material related to Defendants' Rule 12(b)(7) motion is based on declarations and other documents not included in Plaintiffs' Second Amended Complaint, they are properly considered on this motion.  *See Dunmann Realty*, 267 F.R.D. at 101 n.1.

private detective and a member of the National Rifle Association who teaches courses in weapons handling and safety. In these capacities Plaintiff travels throughout the United States to attend gun shows and meet with business contacts. (SAC ¶ 3; Harty Decl. ¶ 2.) Because Plaintiff used to live in Rockland County, New York, he has traveled there "on more than twenty occasions," to visit family and maintain business contacts. (SAC ¶ 3; Harty Decl. ¶ 4.) Plaintiff also purports to be a "tester for the purpose of asserting his civil rights and monitoring, ensuring, and determining whether places of accommodation are in compliance with federal and state laws prohibiting discrimination against disabled persons." (SAC ¶ 16; Harty Decl. ¶ 3.) Plaintiff also states that he "intend[s] to continue visiting Rockland County repeatedly in the future, and initially planned to travel there to visit [ ] family in May, June, or July 2016."[3] (Harty Decl. ¶ 15.)

Between 2013 and 2016, Plaintiff suffered from a medical condition that prevented him from traveling anywhere, including to New York.[4] (*Id.* ¶¶ 14-15.) By February 2016, Plaintiff had fully recovered (*id*. ¶ 15) and made plans to return to the Marketplace even earlier than he originally planned, specifically on either March 26 or 27, 2016. (Harty Decl. ¶ 17.)

Defendants own and operate the Marketplace, a 201,000 square foot commercial shopping center with a total of twenty-six (26) separate tenant spaces located in Rockland County, New York. (Defs.' Mem. at 1.) Having opened for business in 1989, the Marketplace was redeveloped in the early 2000's, approximately ten years after the effective date of the ADA. (SAC ¶¶ 4-6.) As one of the largest and most conveniently located shopping centers in the Rockland area, the

---

[3] The SAC states that "Plaintiff desires to visit Spring Valley Marketplace not only to avail himself of the goods and services available at the property, but also to assure himself that this property is in compliance with the ADA and NYSHRL so that he and others similarly situated will have full and equal enjoyment of the property without fear of discrimination." (SAC ¶ 19.)

[4] Plaintiff alleges that in late 2013 he was "involved in an accident in which he suffered third degree burns in paralyzed areas of his lower body where he has no sensory nerve function. Plaintiff underwent surgery, including extensive skin grafts. His recovery was complicated by persistent infection that caused him to be hospitalized repeatedly." (SAC ¶ 14.)

Marketplace "offers a wide variety of goods and services not available at smaller shopping centers." (Harty Decl. ¶ 5.)  For these reasons, Plaintiff, who "enjoys shopping at the Spring Valley Marketplace," has shopped at the Marketplace "on more than a dozen occasions" during his residency in and return trips to Rockland County.  (Harty Decl. ¶ 5.)

Filed on February 2, 2016, the Second Amended Complaint alleges that Defendants discriminated against Plaintiff by "den[ying] [him] the opportunity to participate and benefit from the goods, services, privileges, advantages, facilities and accommodations at [the Marketplace] equal to that afforded to other individuals." (SAC ¶ 17.)  This claim arises from Plaintiff's visit to the Marketplace on September 5, 2013, when "he encountered numerous architectural barriers that impeded his ability to access the goods and services offered there." (*Id*. ¶ 13.)  Plaintiff alleges that he found the Marketplace inaccessible as it lacked, *inter alia*, (1) a sufficient number of compliant parking spaces and access aisles, (2) curb cuts with a direct route between disabled parking spaces and the facilities, (3) accessible restrooms with the appropriate grab bars or sufficient maneuvering space, (4) wheelchair ramps with the adequate handrails, and (5) doorways with sufficient wheelchair clearance.  (*Id*. ¶ 22, Subsecs. A.-F.)  Plaintiff submitted thirty-two photographs documenting the specific barriers he encountered during his visit.  (Harty Decl. ¶ 6, Ex. 2.)  Plaintiff states that he would like to visit the Marketplace during his upcoming visits to Rockland, but knows that it would be futile to do so "if he wishes to do so free of discrimination" as "Defendants show no intention to comply with the ADA." (SAC ¶ 17; Harty Decl. ¶ 18.)  In lieu of pursuing futile gestures, Plaintiff initiated this ADA case requesting that the Court order Defendants to remedy the alleged architectural barriers.

## II.     Alleged Deficiencies Specific to Plaintiff's Claim for Injunctive Relief

The additional facts contained in these allegations (i.e., second amended complaint) as compared to the original complaint are that tenant stores Subway and Jose O'Brien's were added as defendants and that the wheelchair ramps at the Marketplace are missing required handrails. (*Compare* Compl.  ¶¶ 7, 10 *with* SAC ¶¶ 7-10, 22.)

Plaintiff alleges that he, "and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and activities of Defendants' buildings and its facilities, and have otherwise been discriminated against and damaged by Defendants' ADA violations."   (SAC ¶ 23.)   He asks the Court to enjoin Defendants "from perpetuating any acts and practices" that "exlud[e], [or] den[y] service … to individuals with disabilities," and to issue an order that requires Defendants, *inter alia*, to make all "readily achievable alterations to the [Marketplace] and to the facility operated thereon."   (*Id.* at 10 (Prayer for Relief, Part b).)   To the extent Plaintiff's action seeks injunctive relief, he is ultimately requesting a court order that will require Defendants to make the necessary structural renovations. To support his claims for injunctive relief, Plaintiff alleges that:

> A.  Defendants fail to adhere to a policy, practice and procedure to ensure that their goods, services and facilities are readily accessible to and usable by disabled persons and fail to maintain its accessible features. Defendants' failure to maintain accessibility makes it difficult or impossible for Plaintiff to access the goods and services offered at the facility (SAC ¶ 22 at 6);
>
> B.  The accessible parking at the Spring Valley Marketplace is non-compliant. There is an insufficient number of compliant accessible parking spaces and access aisles. The accessible parking is not properly dispersed. The accessible parking is also not properly maintained. Some parking spaces are not served by curb cuts with a direct route, and accessible parking signage is improperly located and does not line up with the spaces it serves. The side of plaza in which Subway and Jose O'Brien's are located has only one on-compliant space and no curb cut. The lack of compliant parking

5

makes it difficult or impossible for Plaintiff to locate the accessible parking spaces, park his vehicle, exit from his vehicle, get into his wheelchair and access the shopping plaza (*id.* at 6);

C.   The Jose O'Brien restaurant does not have a compliant, accessible restroom. The existing restroom has no grab bars, no accessible stall, insufficient maneuvering space and unwrapped pipes below the sink. The Subway restaurant also does not have a compliant, accessible restroom. The existing restroom has insufficient latch side clearance on the restroom door, no compliant grab bars and unwrapped pipes below the sink. The aisle leading to restroom is obstructed by a rack. The non-compliant, violative and inaccessible features in the public restrooms make it difficult or impossible for Plaintiff to use the restrooms for their intended purpose (*id.* at 6-7);

D.   The Subway restaurant has no accessible seating. Defendants' failure to provide accessible seating makes it difficult or impossible for Plaintiff to access the goods and services offered at the facility (*id.* at 7);

E.   There are ramps at the Spring Valley Marketplace missing required handrails. The lack of handrails for the ramps makes it difficult or impossible for Plaintiff to maneuver his wheelchair on the ramp, thereby impeding or preventing access to the shopping plaza (*id.* at 7);

F.   Spring Valley Marketplace fails to provide a compliant accessible route connecting the disabled parking spaces with all the goods, services and facilities at the property. There are obstructions, doorways lacking sufficient clearance, lack of direct route from parking spaces to the entrances, and non-compliant curb cuts. Defendants' failure to provide continuous path of travel connecting all essential elements of the facility makes it difficult or impossible for Plaintiff to access the goods and services offered at the facility because he is forced to travel through areas where he must face the threat of being struck by an oncoming vehicle (*id.* at 7).

Plaintiff notes that this list of "discriminatory violations" is "not [ ] exclusive," of Defendants' ADA violations," but are those noted after "a preliminary inspection of the [Marketplace]." (SAC ¶¶ 22-23.)

### III.   Procedural History

Plaintiff filed this lawsuit on October 16, 2015, naming Spring Valley and JOL as the only defendants.  (ECF No. 1.)  Plaintiff filed his Second Amended Complaint on February 2, 2016, adding Defendants RK Sub Shop Incorporated (which operates the Subway Restaurant) and UB Kool Inc. (which owns and operates Jose O'Brien Restaurant).[5]  (ECF No. 34.)  Defendants moved to dismiss Plaintiff's Second Amended Complaint on April 19, 2016 (ECF Nos. 39, 40, & 41) and argue that: (1) Plaintiff lacks the standing to obtain injunctive or declaratory relief because he fails to (a) allege a particularized "injury" from architectural barriers and (b) provides no reasonable basis to conclude that he would seek to return; (2) the allegations in the Second Amended Complaint fail to state a claim for violation of either Title III of the ADA or the NYSHRL; and (3) Plaintiff failed to join necessary parties. (Defs.' Mem. at 2.)  On April 19, 2016, Plaintiff filed an opposition memorandum (ECF No. 44, Pl.'s Mem. in Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Opp'n")), to which Defendants replied.  (ECF Nos. 45 & 46.)

## LEGAL STANDARD

### I.   Dismissal under Rule 12(b)

A.   Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  It is well-settled that the "plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence."  *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (citing *Luckett v. Bure*, 290 F.3d

---

[5] Plaintiff served the Second Amended Complaint on Defendant UB Kool Inc. on March 1, 2016, (ECF No. 51) and on Defendant RK Shop Incorporated on April 4, 2016.  (ECF Nos. 51, 52).  Service was timely effected against both Defendants and neither UB Kool nor RK Shop has filed an answer or otherwise responded to the SAC. (ECF No. 53, Letter, July 27, 2016.)

493, 497 (2d Cir. 2002)).  In reviewing a Rule 12(b)(1) motion to dismiss, the court "must accept as true all material factual allegations in the complaint, but [the court is] not to draw inferences from the complaint favorable to plaintiff."  *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004).  The court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [it] may not rely on conclusory or hearsay statements contained in the affidavits."  *Id.*

B.  Rule 12(b)(6)

Under Rule 12(b)(6), a complaint should be dismissed if the plaintiff has not offered sufficient factual allegations that render the claims it asserts facially plausible.  *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)).  The task of the court in ruling on a motion to dismiss is to "assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof."  *In re Initial Pub. Offering Sec. Litig.*, 383 F.Supp.2d 566, 574 (S.D.N.Y. 2005).  The court must accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).

C.  Rules 12(b)(7) and 19

Under Rule 12(b) (7), courts are required to dismiss an action for failure to join a necessary party under Rule 19.  *See* Fed. R. Civ. P. 12(b)(7); *see also Federal Ins. Co. v. SafeNet, Inc.*, 758 F.Supp.2d 251, 257 (S.D.N.Y. 2010).  Courts considering a Rule 12(b)(7) motion look to Rule 19(a) to determine whether an absent party qualifies as a "necessary" party under Rule 19(a).  *See*

8

*Federal Ins. Co.*, 758 F.Supp.2d at 257 (citing *Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 724 (2d Cir.2000); *LBA Intern. Ltd. v. C.E. Consulting LLC,* 2010 WL 305355 *3 (S.D.N.Y.2010).

There are three components of Rule 19(a) that courts assess to determine whether an absent party is required.  *See* Fed. R. Civ. P. 19(a)(1); *C.D.S., Inc. v. Zetler*, No. 16 CIV. 3199 (VM), 2016 WL 4257745, at *7 (S.D.N.Y. Aug. 3, 2016), *reconsideration denied sub nom. C.D.S., Inc. v. Bradley Zetler, CDS, LLC*, No. 16 CIV. 3199 (VM), 2016 WL 5867450 (S.D.N.Y. Sept. 30, 2016) (quoting Fed. R. Civ. P. 19(a) (1)); *see also Federal Ins. Co.*, 758 F.Supp.2d at 257.  The first component asks whether the court can afford complete relief in the absence of the non-party. *See* Fed. R. Civ. P. 19(a)(1)(A); *Federal Ins. Co.*, 758 F.Supp.2d at 257 (citing *MasterCard Int'l, Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 385 (2d Cir. 2006)).  The second component focuses on whether the non-party's absence will impair or impede its ability to protect its interests. *See* Fed. R. Civ. P. 19(a)(1)(B)(i); *Federal Ins. Co.*, 758 F.Supp.2d at 257–58 (citing *MasterCard*, 471 F.3d 377, 386-87).  The third component asks whether the existing parties would be subject to "double, multiple, or otherwise inconsistent obligations."  *See* Fed. R. Civ. P. 19 (a)(1)(B)(ii). If any of the three components are satisfied, the absentee party constitutes a required party.  *See Federal Ins. Co.*, 758 F.Supp.2d at 257.

If a party held to be necessary has not been joined, the court "must" order that the person be made a party.  *See* Fed. R. Civ. P. 19(a)(2); *see also Viacom,* 212 F.3d at 725.  In the event that joinder is not feasible, the court proceeds to consider "whether "in equity and good conscience," the action should proceed with the existing parties, or be dismissed. *See* Fed. R. Civ. P. 19(b).

## II.    Elements of an ADA Claim

Under Title III of the ADA, "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages,

or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). "To state a claim under Title III, [Plaintiff] must allege (1) that [he] is disabled within the meaning of the ADA; (2) that defendants own, lease, or operate a place of public accommodation; and (3) that defendants discriminated against [him] by denying [him] a full and equal opportunity to enjoy the services defendants provide." *Rosa v. 600 Broadway Partners, LLC*, 175 F. Supp. 3d 191, 198-99 (S.D.N.Y. 2016) (citing to *Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008)). "A plaintiff can establish discrimination in violation of the ADA by showing that the defendant violated the applicable accessibility standards set forth in the ADA Accessibility Guidelines ('ADAAG')." *Lemmons v. Ace Hardware Corp.*, No. 12–CV–03936 (JST), 2014 WL 3107842, at *7 (N.D.Cal. July 3, 2014); see also *Shariff v. Beach 90th St. Realty Corp.*, No. 11–CV–2551 (ENV)(LB), 2013 WL 6835157, at *4 (E.D.N.Y. Dec. 20, 2013) ("The Court looks to the [ADAAG] to determine whether the alleged architectural barriers constitute discrimination under the ADA"). Because there is no dispute here as to the first two elements, this Court's inquiry focuses only on the third element (i.e., whether Defendants discriminated against Plaintiff by denying him a full and equal opportunity to enjoy the services the Marketplace provides).

### III.     Standing Test for Injunctive Relief under the ADA[6]

Defendants' argue that Plaintiff lacks standing to challenge the discrimination resulting from alleged deficiencies because "he does not allege that he personally encountered and was

---

[6] Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a). Discrimination is defined by the Act to include "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden." *Id.* § 12182(b)(2)(A)(iii).

injured by any of the alleged architectural barriers at the Shopping Center," and also "failed to allege sufficient facts demonstrating that he intends to return to the Shopping Center."  (Defs.' Mem. at 4-5, 7.)  Citing to Plaintiff's complaint, Defendants contend that Plaintiff lacks standing to seek injunctive relief because he alleges that he encountered architectural barriers without saying *what* they were or *how* they affected him.  (Defs.' Mem. at 5, 7.)

To establish constitutional (Article III) standing, a plaintiff generally must prove: (1) an injury in fact, which must be (a) concrete and particularized, and (b) actual or imminent; (2) a causal connection between the injury and the defendant's conduct; and (3) that the injury is likely to be redressed by a favorable decision.  *Bernstein v. City of New York*, 621 Fed.Appx. 56, 57 (2d Cir. 2015) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992)) (internal quotation marks omitted).  Because injunctive relief is a forward-looking remedy, courts look beyond the alleged past violation and consider the possibility of future violations.  Plaintiffs seeking injunctive relief therefore must also prove that the identified injury in fact presents a "real and immediate threat of future injury," often termed "a likelihood of future harm."  *Shain v. Ellison*, 356 F.3d 211, 215-16 (2d Cir. 2004); *see also Rapa v. City of N.Y.*, No. 15-CV-1916 (JMF), 2015 WL 5671987, at *1 (S.D.N.Y. Sept. 25, 2015) (citing *City of Los Angeles v. Lyons,* 461 U.S. 95, 105 (1983)).

Courts in the Second Circuit applying these requirements in the ADA context have previously found standing (and therefore injury in fact) "where (1) the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue; and (3) it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of [the accommodation] to plaintiff's home, that plaintiff intended to return to the subject location."  *Kreisler v. Second Ave. Diner Corp.,* 731 F.3d 184, 187-88 (2d. Cir. 2013) (citing *Camarillo*, 518 F.3d at 158).

11

In ADA cases, "a 'broad view of constitutional standing' is appropriate because 'private enforcement suits are the primary method of obtaining compliance with the Act.'" *Baker v. New York State Dep't of Envtl. Conservation*, No. 10–CV–1016 (GLS/RFT), 2012 WL 2374699, at *2 (N.D.N.Y. Jun. 22, 2012) (quoting *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011)).

### IV.   Claims Under the NYSHRL

The New York State Human Rights Law ("NYSHRL")[7] prohibits denying access to "the accommodations, advantages, facilities or privileges" of any place of public accommodation on the basis of a disability. N.Y. Exec. Law § 296(2)(a).  The statute defines the term "discriminatory practice" in this respect to encompass "the refusal to remove architectural barriers ... in existing facilities ... where such removal is readily achievable." *de la Rosa v. 597 Broadway Dev. Corp.*, No. 13-CV-7999 (LAK) (MHD), 2015 WL 7351540, at *17 (S.D.N.Y. Aug. 4, 2015), *report and recommendation adopted in part*, No. 13-CV-7999 (LAK), 2015 WL 7308661 (S.D.N.Y. Nov. 19, 2015).

Courts have held that "[t]he relevant portions of the NYSHRL are interpreted to be similar to those of the ADA." *Kreisler,* 2012 WL 3961304 at *13.  Indeed, the Second Circuit has observed that a disability-discrimination claim under the NYSHRL "survives or fails on the same basis as [the parallel] ADA claim." *Graves v. Finch Pruyne & Co.,* 457 F.3d 181, 186 n.3 (2d Cir. 2006).  *Accord Rodal v. Anesthesia Grp. of Onondaga, P.C.,* 369 F.3d 113, 118 (2d Cir. 2004). Because the same legal standards govern the disability provisions of the ADA and NYSHRL, the Court must find that Plaintiff also has standing to seek injunctive relief under the NYSHRL.

---

[7] The Court is using the collective term NYSHRL to refer to the New York State Executive Law § 296(21) and its affiliated New York State Civil Rights Law §§ 40-c, 40-d, which authorize penalties.

**DISCUSSION**

I.     **Lack of Subject Matter Jurisdiction**

Defendants do not contest that Plaintiff has adequately established that any discriminatory treatment, as alleged, will continue.[8]  Because it is "reasonable to infer" from the Second Amended Complaint that the alleged violations will continue if the Court finds that Plaintiff has satisfied the second *Kreisler* factor.

Defendants instead argue that Plaintiff has failed to meet the first and third prongs of the standing test, namely that Plaintiff has failed to establish a sufficiently "particularized," past injury under the ADA and provides no reasonable basis to conclude that he intends to return.  Applying the *Kreisler* factors here, and accepting all allegations in the Second Amended Complaint as true for purposes of Defendants' motion, the Court finds that Plaintiff has standing to seek injunctive relief under Title III of the ADA  .

A.  Plaintiff's Past Injury Under the ADA

To establish the injury-in-fact requirement for standing, in addition to showing "actual or imminent" injury, plaintiffs must show that their injury is "concrete and particularized." "[P]articularized, [] mean[s] that the injury must affect the plaintiff in a personal and individual way." *Defenders of Wildlife*, 504 U.S. at 560 n. 1.  Defendants' assertion that Plaintiff has failed to plead standing because he alleges "generalized" injuries without saying that "he actually encountered or even observed any of them" is unavailing.  (Defs.' Mem. at 6.)

While Plaintiff's Second Amended Complaint is certainly broad, it includes two categories of concrete factual allegations in support of the discrimination claim.  First, the Second Amended Complaint includes a list of allegedly violative conditions.  (SAC ¶ 22, Subsec. A-F).  The Second

---

[8] Plaintiff avows that "Defendants show no intention to comply with the ADA." (Harty Decl. ¶ 17.)

Circuit recently held that a plaintiff who included a list of "violative conditions at Central Park," had satisfied the injury-in-fact prong. *Bernstein*, 621 Fed. Appx. at 57-58. Like the amended complaint in *Bernstein*, Plaintiff's amended complaint in the instant case alleges that the Defendants failed to provide a "[s]ufficient number of compliant accessible parting spaces and access aisles" or "compliant, accessible restrooms" with the requisite grab bars, accessible stalls, or sufficient maneuvering space that is unobstructed by "unwrapped pipes below the sink." (SAC ¶ 22, Subsecs. B, C.)

Second, the amended complaint and sworn statements are sufficient to support that Plaintiff personally encountered the alleged violations as a result of his disability. For example, Plaintiff alleges that while attempting to shop at the Marketplace on September 5, 2013, he encountered ramps without handrails that "ma[de] it difficult or impossible for Plaintiff to maneuver his wheelchair on the ramp." (SAC ¶ 22, Subsec. E.) Plaintiff further alleged that a lack of accessible routes between the disabled parking spaces and the Marketplace "ma[de] it difficult or impossible for Plaintiff to access" the facility without being "forced to travel through areas where he must face the threat of being struck by an oncoming vehicle." (SAC ¶ 22, Subsec. F.) These particularized instances of inaccessibility, as experienced by Plaintiff, satisfy the first prong of the *Kreisler* standing test. Even assuming, *arguendo*, that Plaintiff only personally experienced one of these aforementioned barriers, he still maintains standing to pursue injunctive relief because under the ADA deterrence may constitute an injury. *See Kreisler*, 731 F.3d at 188 (holding that "in the context of the ADA, the fact that the wheelchair-inaccessible entrance deterred Kreisler from accessing the Diner established a concrete and particularized injury; Kreisler need not attempt

14

to overcome an obvious barrier").[9]  Once a plaintiff has established standing to sue for at least one barrier under the ADA, he has standing to challenge a list of alleged barriers regardless of whether he has personally encountered them.  *Id.*  Because disabled plaintiffs are not required to attempt to enter premises that appear physically inaccessible, they may even "drive by" and properly determine that access impediments make entry potentially dangerous.  Therefore, Plaintiff's amended complaint in the instant case, which is replete with references to and photographs of the barriers inside the premises, clearly satisfies the first prong of the standing test.

     B.  Plaintiff's Intent to Return to Defendants' Place of Accommodation

The remaining issue regarding standing is whether the Court can reasonably infer Plaintiff's intent to return from his amended complaint and sworn statements.[10]  "Intent to return is a highly fact-sensitive inquiry that incorporates a range of factors" such as "the frequency of the plaintiff's past visits" and "the proximity of the defendant's services, programs, or activities to the plaintiff's home" along with any other factor "relevant to the calculation" including the plaintiff's "occupation or demonstrated travel habits."  *See Camarillo*, 518 F.3d at 158 (plaintiff's past visits and proximity to the restaurant made it reasonable to infer an intent to return); *Harty v. Simon Prop. Grp., L.P.*, 428 F. App'x 69, 71-72 (2d Cir. 2011) (finding that plaintiff's avowal to return coupled with allegations regarding personal and business travel habits were "sufficient to support a plausible inference at the pleading stage," of intent to return to the premises).

---

[9] "To the extent *Camarillo* left unresolved the question of whether deterrence constitutes an injury under the ADA, we now adopt the Ninth Circuit's ruling in *Pickern* and hold that it does."  *Kreisler*, 731 F.3d at 188 (citing *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1137-38 (9th Cir. 2002).

[10] Plaintiff attached his declaration to the Memorandum in Opposition to Defendant's Motion to Dismiss. (*See* ECF No. 44, Pl.'s Opp'n, Ex. 44-1.)  When considering a Rule 12(b)(1) motion to dismiss for lack of standing, "it is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing."  *Thompson v. County of Franklin*, 15 F.3d 245, 249 (2d Cir. 1994) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).

Defendants argue that all factors weigh against any inference that Plaintiff is likely to return to the Marketplace, chiefly that Plaintiff's "more than a dozen" *past* shopping trips to the Marketplace are insufficient to deduce a *future* intent to return.  To support these claims, Defendants cite to mostly out-of-circuit cases, but the Court finds that any analysis of Plaintiff's intent return is incomplete without considering the Second Circuit's decision in *Harty v. Simon Property Group* that is both binding on this Court, 428 F. App'x 69 (2d Cir. 2011), and where the facts and pleadings bear a remarkable similarity to the instant case.[11]

In *Harty v. Simon Property Group* the instant Plaintiff, Owen Harty, sued a mall for alleged Title III violations. 428 F. App'x 69, 70.  In that case, the Second Circuit found Plaintiff proved a plausible intent to return to the Marketplace by declaring, exactly as he does now, that he desired to return to the Nanuet Mall both as a patron "to avail himself of the goods and services offered to the public at the property" and as a tester "to determine whether the property has been made ADA compliant."[12]  *Id.* at 71.  The Second Circuit determined Harty was likely to return based on the fact that he traveled nationwide in a professional capacity, and that, as a former resident of New York, he returned "to the area quite often to visit family who still reside there."  *Id.*  In finding that these allegations and sworn statements were "sufficient to support a plausible inference at the pleading stage that Harty [would] likely return to the Nanuet Mall," the Second Circuit specifically overturned the district court's holding that Harty merely posited "a vague and unsupported general intent or desire to visit the property again."  *Harty v. Simon Property Group,* 2010 WL 5065982,

---

[11] The only notable difference between the pleadings in *Harty v. Simon Property Group* and the instant case is that Plaintiff had affixed a list of upcoming gun shows to his opposition memorandum.  Plaintiff has replaced this list with two exhibits: (1) thirty-two photographs of the barriers he encountered at the Marketplace during his September 2013 visit and (2) a court order directing Plaintiff to appear in Philadelphia, Pennsylvania on May 24, 2016 for a damages hearing.

[12] Plaintiff's instant complaint alleges that "Plaintiff plans to return to the Spring Valley Marketplace in June or July, 2016 to avail himself of the goods and services offered to the public at the property, and to determine whether the property has been made compliant with the ADA and NYSHRL." (SAC ¶ 16.)

at *2 (S.D.N.Y. Dec. 7, 2010).   Here, the Court finds that Plaintiff's allegations and sworn statements, which largely mirror those reviewed in *Harty v. Simon Property Group*, sufficiently support an inference that he will likely return to the Marketplace, a likelihood that finds some support in Plaintiff's alleged professional and family reasons.   Moreover, Plaintiff's allegation to return in June or July 2016 constitutes more than a vague "some day" intention to return. [13]   (SAC ¶ 16.)

The Court further notes that the distance between Harty's permanent residence in Florida and the Marketplace is not dispositive of standing.  *See, e.g., Harty v. Simon Property Group,* 2010 WL 5065982, at *2 (noting that the site of the alleged discrimination was 1,200 miles from Harty's permanent residence in Florida); *see also Bernstein*, 621 F. App'x at 59 (stating "that the location of [plaintiff's] home in Birmingham, Michigan is not determinative to his ability to establish intent to return to [Central] Park").   Rather than focus on the distance between the place of accommodation and Plaintiff's home, the Second Circuit's analysis in *Harty v. Simon Property Group* credited Harty's intent to return to the area for business and personal reasons, as the Court does in this case.

Defendants also corresponded with the Court after filing their motion to dismiss to explain that the Jose O'Brien Restaurant ceased operations at some unstated date after Plaintiff filed his second amended complaint, which added the Restaurant's owner-operator as an additional defendant.  (ECF No. 50.)  In a letter dated July 19, 2016, Defendants argue that "plaintiff cannot possibly return to Jose O'Brien's and suffer future injury there."  *Id* at 2.  We agree with Plaintiff's

---

[13] The Court notes that Plaintiff intends to return to the Rockland area even earlier than originally intended. As of February 2, 2016, when Plaintiff filed his Second Amended Complaint, Plaintiff intended to return to Rockland in June or July 2016. (SAC ¶ 16.)  But on February 24, 2016, Plaintiff was ordered to appear in Philadelphia, Pennsylvania on May 24, 2016 for a damages hearing and revised his travel plans accordingly.  As of the April 19, 2016, when Plaintiff filed his opposition, he intended to visit the Rockland area on May 26 or 27, 2016.

response that Defendants' "miss[] the mark" in arguing that it is impossible for Plaintiff to suffer a future injury at Jose O'Brien because it is now closed.  (ECF No. 53, Letter dated July 27, 2016 at 2.)  While Defendants admit that "a different restaurant is expected to open in its place," they fail to provide the new tenant's identity or, more importantly, whether a new lease with terms specific to renovations or structural barriers has been executed.  (ECF No. 50, Letter at 2.)

At this stage in the proceedings, after the correspondence between the parties and the memorandum provided, the Court maintains it is plausible to assume that Plaintiff could encounter the same alleged barriers within the new restaurant's bathroom, specifically "no grab bars, no accessible stall, insufficient maneuvering space and unwrapped pipes below the sink," during some future visit.  The Court reiterates here that, "where the violation alleged deters a plaintiff from accessing the services sought, the intent to return need only be an intent to frequent the establishment *if* the violation is remedied."  *Ortiz v. Westchester Med. Ctr. Health Care Corp.*, No. 15-CV-5432 (NSR), 2016 WL 6901314, at *6 (S.D.N.Y. Nov. 18, 2016) (emphasis in original) (citing *Kreisler*, 731 F.3d at 187-88 (citing 42 U.S.C. § 12188(a)(1)) ("disabled individuals need not 'engage in a futile gesture if such a person has actual notice that [the private entity] does not intend to comply with [ADA] provisions'"); *see Harty*, 536 Fed. Appx. at 155 n.1 (the "complaint and affidavit must still give rise to 'a reasonable inference that [the plaintiff] would frequent [the Inn] were the violation remedied'")).  Moreover, absent any indication that the alleged barriers will be remedied, it is plausible for Plaintiff to seek meaning relief regarding the space previously occupied by Jose O'Brien.

Defendants also argued the closing weakened inference that Plaintiff was likely to return, and Plaintiff countered that the action may proceed against the remaining Defendants, the two landlords and the operator of Subway.  The Court finds that the closing of Jose O'Brien does not

impact the alleged violations remaining in the mall's common areas and parking lot.  Therefore, the Court finds that Plaintiff may still pursue meaningful relief against the remaining named defendants.

Based on Plaintiff's history of travel to Rockland, New York, his alleged plans to continue to return to the Marketplace, and the dates he has proffered on when he exactly plans to return, it is reasonable to infer at this stage that Plaintiff intends to return to the Marketplace in the future. Having met the three *Kreisler* factors, the Court concludes that Plaintiff has standing to pursue his claims.  Accordingly, the Court will not dismiss the action under Rule 12(b)(1), and the motion is DENIED on that basis.[14]

## II.     Failure to State a Claim

Because the Court finds that Plaintiff has standing, it will now address Defendants' motion to dismiss the action under Rule 12(b)(6).  Defendants argue that Plaintiff has failed to plead with the level of specificity required by *Twombly*.  (Defs.' Mem. 22-23.)

To establish a prima facie violation of the ADA, plaintiff must show that 1) he is a qualified individual with a disability; 2) the Marketplace is an entity subject to the ADA and the Rehabilitation Act; and 3) plaintiff was denied the opportunity to participate in or benefit from the Marketplace's goods and services.  *Ross v. City Univ. of N.Y.*, No. 15-CV-4252 (KAM/VMS), 2016 WL 5678560, at *5 (E.D.N.Y. Sept. 29, 2016).

For the purposes of this motion, Defendants concede that Plaintiff is a qualified individual with a disability and that the Marketplace is generally subject to the ADA and NYSHRL.

---

[14] The Court notes that Plaintiff argues that "he has an independent basis for standing in his capacity as a[n] [ADA] tester," (Pl.'s Opp'n at 22) and Defendants contend in opposition that he does not.  (Defs.' Mem. at 21) (characterizing Plaintiff's tester status as a "serial litigant" whose numerous cases "further undercut the plausibility of his general" claims).  The Court declines to rule on the issue of tester standing as it is unnecessary to the standing analysis above.

Defendants, however, challenge the third element necessary to show an ADA violation, arguing that he has not suffered any actual discrimination to the extent that he has failed to allege that he "actually encountered, and was injured by, any architectural barriers" at the Marketplace.  (Defs.' Mem. at 23.)

Upon review of the pleadings, the Court finds that Plaintiff, who identified numerous barriers in ample detail, has sufficiently stated claims for relief under both the ADA and NYSHRL. More specifically, Plaintiff identified at least six "architectural barriers" at the Marketplace that he personally encountered or that personally deterred him from visiting the Marketplace. *Camarillo,* 518 F.3d at 156.; *see, e.g., Access 4 All, Inc. v. Trump Int'l Hotel & Tower Condo.,* 458 F.Supp.2d 160, 172 (S.D.N.Y. 2006); *Small v. General Nutrition Cos.,* 388 F.Supp.2d 83, 95 (E.D.N.Y. 2005).  These barriers, which he photographed, include: (1) an insufficient number of compliant accessible parking spaces and access aisles; (2) an insufficient number of parking spaces with curb cuts; (3) a lack of compliant accessible restrooms; (4) a lack of accessible seating; (5) a lack of wheelchair ramps with the required handles; and (6) a lack of compliant accessible routes connecting disabled parking spaces to the property.  Accepting these allegations as true and drawing all reasonable inferences in Plaintiff's favor, as the Court must, Plaintiff has plausibly alleged "that defendant[ ] discriminated against [him] by denying [him] a full and equal opportunity to enjoy the services defendant[ ] provide." *Camarillo,* 518 F.3d at 156.  Accordingly, the Court will not dismiss the complaint for failure to state a claim under Rule 12(b)(6), and the motion is DENIED on that basis.

### III.     Failure to Join a Party under Rule 19

The last issue is whether the suit can proceed without joining all the tenants of the Marketplace. As discussed above, Plaintiff's SAC added two tenants, the operators of Subway and the Jose

O'Brien Restaurant.  After Defendants filed their motion to dismiss, the parties notified the Court that Jose O'Brien had closed and further argued as to how this closing impacted the action.  In relevant part, Defendants contend that, because full relief cannot be accorded to the Plaintiff absent joining all the tenants as parties, dismissing the SAC is warranted under Fed. R. Civ. P. 12(b)(7) and 19(a)(1)(a).  The Court disagrees and concludes that the remaining tenants are not necessary parties under Rule 19.

Defendants argue, albeit thinly, that Plaintiff's failure to join the individual occupants of the Marketplace will be fatal to Defendants' capacity to implement any order requiring renovations.  Stated another way, Defendants will be unable to fully renovate store spaces if all the individual occupants are not joined. The Court remains unpersuaded by such an argument, which challenges the scope of relief rather than Plaintiff's right in the first instance.

As an initial matter, the Court observes that Plaintiff did properly identify at least some of the defendants contemplated by the ADA for claims under Title III.  In enacting the statutes, Congress apparently intended that the prohibition against discrimination "appl[y] to any person who *owns*, *leases* … or operates a place of public accommodation."  *H.R. Conf. Rep.* 101-558, 101st Cong., 2d Sess. (1990) (emphasis added).  Of course, owners and operators of facilities may allocate by lease or contract their relative responsibilities for complying with the ADA.  *Robert v. Royal Atlantic Corp.*, 542 F.3d 363 (2008) (quoting *Americans with Disabilities Handbook* at § 6.02).

The Court cannot, at this stage in the litigation, say whether Plaintiff's claims would fail based upon named Defendants' potential inability to comply with a district court order directing modifications.  Despite this concern, Defendants' "unilateral" authority or capacity to renovate the Marketplace in compliance with the ADA has "little bearing on whether they violated the ADA." *Royal Atlantic*, 542 F.3d at 375 (recognizing that it would be a "rare" case where the ownership

structure of a facility could excuse the ADA's accessibility requirement).  Title III's main operative

provision, § 12182, provides that private entities cannot evade their responsibility to comply with

the ADA through contractual agreements, which would include rental agreements.   Section

12182(b)(1)(A)(i) provides:

> It shall be discriminatory to subject an individual or class of
> individuals on the basis of a disability or disabilities of such
> individual or class, directly, *or through contractual, licensing, or*
> *other arrangements*, to a denial of the opportunity of the individual
> or class to participate in or benefit from the goods, services,
> facilities, privileges, advantages, or accommodations of an entity.

(emphasis added); *see also* § 12182(b)(1)(A)(ii) (making it "discriminatory" to afford to disabled

persons, "through contractual, licensing, or other arrangements," an opportunity to "participate in

or benefit from" such goods, services, facilities, and accommodations that is not equal to that

afforded to other individuals); § 12182(b)(1)(A)(iii) (making it "discriminatory" to provide

disabled persons, "through contractual, licensing, or other arrangements," a benefit that is

"different or separate from" that provided to other individuals).[15]  These provisions make clear

that private entities otherwise covered by Title III may not avoid their obligations through contract,

such as by contracting to provide, "goods, services, facilities, privileges, advantages, or

accommodations" at venues they own, but may not control.[16]

Consistent with these considerations, courts assess three components of Rule 19(a)(1) to

determine whether a non-party is required.  *See* Fed. R. Civ. P. 19(a)(1); *see also Federal Ins. Co.*,

---

[15] The House of Representatives Committee Report explained: "The intent of the[se] contractual prohibitions
is to prohibit a public accommodation from doing indirectly through a contractual relationship, what it may not do
directly … [A] covered entity may not use a contractual provision to reduce any of its obligations under this Act.  In
sum, a public accommodation's obligations are not extended or changed in any manner by virtue of its lease with the
other entity."  H.R. Rep. No. 101-485(II), at 101, 104 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 384, 387.

[16] Such evasion would contravene the broad inclusionary purposes of Title III, "to extend the [ ] general prohibitions
against discrimination to privately operated public accommodations and to bring individuals with disabilities into the
economic and social mainstream of American life."   H.R.Rep. No. 101-485(II), at 99 (1990), reprinted in 1990
U.S.C.C.A.N. 303, 382 (emphasis added); *see also* S.Rep. No. 101-116, at 58 (1989) (same).

758 F.Supp.2d at 257.  In brief, they include (1) whether the court can afford complete relief in the absence of the non-party; (2) whether the non-party's absence will impair or impede its ability to protect its interests; and (3) whether the existing parties would be subject to "double, multiple, or otherwise inconsistent obligations."  If *any* of the three components are satisfied, the absentee party constitutes a required party.  *See Federal Ins. Co.*, 758 F.Supp.2d at 257 (emphasis added).

(1) Complete Relief[17]

Defendants' principally rely on the first component of Rule 19(a) to argue that all the tenants are necessary parties.  It contends that not naming the other twenty-four (24) current tenants as joint defendants will preclude Defendants from removing any alleged architectural barriers located within particular spaces occupied by the tenants that are not named as defendants.  (Defs.' Mot. at 24.)  Applying the first component here, this Court finds that it can grant adequate relief to Plaintiff without joining all the tenants leasing space at the Marketplace.

No evidence has been presented establishing the legal form of ownership or possible avenues of voluntary compliance.  And despite this lack of evidence, it is still apparent that such adequate remedies are available.  First, it is important to consider that the maximum relief available with respect to the removal of architectural or communications barriers under Title III is limited to those steps that are "readily achievable" by the covered entity.  *See* 42 U.S.C. §§ 12182(b)(2)(A)(iv) & (v), 12181(9).[18]  The "administrative or fiscal relationship of the facility or

---

[17] *See* Rule 19(a)(1)(A).

[18] An action is "readily achievable" if it is "easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. § 12181(9). In determining whether an action is "readily achievable," the following four factors are considered:
(A) the nature and cost of the action needed under this chapter;
(B) the overall financial resources of the facility or facilities involved in the action; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility;
(C) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and

facilities in question to the covered entity," is taken in account when assessing whether removing the architectural barriers is "readily achievable."  42 U.S.C. § 12181(9)(D).  Accordingly, any individual occupants' Title III obligations would be determined with respect to the short term nature of their relationship with the Marketplace, among other considerations.

Notwithstanding the specifics of the commercial relationship between the landlords and individual occupants, it is still possible for Plaintiff to obtain adequate relief against the named defendants.  The majority of the violations alleged in the Complaint, with the exception of non-compliant restrooms and seating inside of the Subway and Jose O'Brien Restaurant, relate to common areas that are presumably under Defendants' exclusive control.  These include: an insufficient number of properly dispersed accessible parking (SAC ¶ 22 at 6, Subsec. B);[19] a lack of ramps with the appropriate handrails to assist Plaintiff in accessing the mall (*id*. at 7, Subsec. E); lack of compliant routes between the parking lot and mall entrances (*id*. at 7, Subsec. F); obstructed doorways with insufficient clearance (*id.*); and lack of compliant curb cuts (*id.*).  It seems then that if ordered to comply with the ADA, Defendants may elect (among other things) to either (1) prospectively enjoin individual occupants from making certain kinds of architectural decisions regarding conditions over which they have control or (2) elect to renovate areas which they singularly control (e.g., the mall's parking lot or common areas).  While the first option requires Defendants to solicit the assistance of individual occupants to comply with the ADA, the second demonstrates that they may make numerous renovations unilaterally.  Therefore, adequate

---

(D) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity.  *Id.*

[19] Complaint further details that some parking spaces are not served by curb cuts with a direct route to the mall, and accessible parking signage is improperly located and does not line up with the spaces it serves.  (SAC ¶ 22 at 6, Subsec. B.)

relief does not necessarily require joining all individual occupants and the first component of 19(a) is not satisfied.

(2) <u>Protecting Legally Cognizable Claims</u>[20]

Turning to the second component of Rule 19(a), the claims in this action do not present the faintest suggestion that the absence of the remaining tenants would impede these non-parties' ability to protect their own interests. *C.D.S., Inc. v. Zetler*, No. 16 CIV. 3199 (VM), 2016 WL 4257745, at *8 (S.D.N.Y. Aug. 3, 2016), *reconsideration denied sub nom. C.D.S., Inc. v. Bradley Zetler, CDS, LLC*, No. 16-CV-3199 (VM), 2016 WL 5867450 (S.D.N.Y. Sept. 30, 2016); (relying on *Mastercard*, 471 F.3d at 387 ("[N]ecessary parties under Rule 19(a)(2)(i) are only those parties whose ability to protect their interests would be impaired because of that party's absence from the litigation.") (emphasis in original). Other than a wholesale conclusory statement alleging that "plaintiff's election not to name [the other tenants] precludes the Court from granting any such relief," Defendants never identify the tenants or interests that would be impaired because of that party's absence. It is unclear, at this stage, why Defendants would be unable to unilaterally address the violations alleged in Plaintiff's SAC. Consequently, the second component of Rule 19(a) is not satisfied.

(3) <u>Burdensome Obligations for Existing Party</u>[21]

Defendants do not address the third component of Rule 19(a). Since Defendants have failed to identify any concrete risk it may encounter in relation to this action, this Court finds that the third component of Rule 19(a) is not satisfied.

No analysis pertaining to Rule 19(b) is necessary because the Court has determined that the remaining twenty-four (24) tenants are not "required" parties under Rule 19(a).

---

[20] *See* Rule 19(a)(1)(B)(i).
[21] *See* Rule 19(a)(1)(B)(ii).

Ultimately, the Court finds that the parties have not created an adequate evidentiary record on the issue of necessary parties and is therefore unable to dismiss the action under Rule 12(b)(7), and the motion is DENIED on that basis.

## CONCLUSION

Therefore, the Court finds that Plaintiff has standing to pursue this claim, at this stage in the litigation, because he has (1) established (a) a sufficiently "particularized" injury and (b) an intent to return to the Marketplace; (2) sufficiently stated claims for relief under both the ADA and NYSHRL; and (3) not failed to join necessary parties. Accordingly, Defendants' motion to dismiss is DENIED in its entirety. Defendants shall file an answer on or before **February 9, 2017**. Parties are further directed to appear for an initial case management and scheduling conference with the Court pursuant to Fed. R. Civ. P. 16 on **March 2, 2017, at 10:00 a.m.** in **Courtroom 218** of the Charles L. Brieant, Jr. Courthouse, 300 Quarropas Street, White Plains, New York 10601. The parties shall confer in accordance with Fed. R. Civ. P. 26(f) at least 21 days prior to the conference and attempt in good faith to agree upon a proposed discovery plan that will ensure trial readiness within six months of the conference date. The parties shall also complete a Civil Case Discovery Plan and Scheduling Order and bring it to the conference. The Clerk of Court is respectfully directed to terminate Docket No. 39.

Dated:   January 9, 2017
         White Plains, New York

SO ORDERED:

NELSON S. ROMÁN
United States District Judge